CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 16 2010

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| B. K. CRUEY, P.C. and B.K. CRUEY, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 7:09CV00516 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| STEPHEN C. HUFF, JR., et al., ) | By: Hon. Glen E. Conrad |
| ) | United States District Judge |
| Defendants. ) | |

B.K. Cruey, an attorney in Montgomery County, Virginia, filed this civil rights action under 42 U.S.C. § 1983 on behalf of himself and his law firm. The action is presently before the court on the motion to dismiss filed by Elinor E. Williams and Karen Sue Garnand; the motion to dismiss filed by Ricky Lee Early, Roger Dale Nester, Bruce W. Nester, and Eric Nester (collectively referred to as the Nester defendants); the plaintiffs' motion for entry of default against Stephen C. Huff, Jr.; and the plaintiffs' motion for a permanent injunction. The court held a hearing on the parties' motions on April 7, 2010. For the reasons that follow, the motion to dismiss filed by Williams and Garnand will be granted; the motion to dismiss filed by the Nester defendants will be granted in part and denied in part; the plaintiffs' motion for entry of default will be granted; and the plaintiffs' motion for permanent injunctive relief will be taken under advisement.

## Background

The following summary of the facts, which is taken from the plaintiffs' complaint, is accepted as true for purposes of the defendants' motions to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Since March of 1999, Cruey has leased a house on a 29-acre tract of land in Montgomery County owned by Scott and Pam Easter. The house is situated approximately one-half mile from Ironto Road and is accessible by a driveway that crosses the Roanoke River.

Defendants Bruce and Roger Nester own a tract of land that adjoins the driveway. The driveway has been the subject of ongoing disputes involving the Nesters, the Easters, and Cruey. In the late 1990s, Cruey represented the Easters in a declaratory judgment action against the Nesters. By order entered October 11, 1999, the Circuit Court of Montgomery County held that the Nesters had abandoned their easement over the driveway, and that the Nesters had no right to interfere with the Easters' use of the driveway. Notwithstanding the order, the Nesters continued to use the driveway, and on January 9, 2001, Bruce Nester was convicted of trespassing. Despite the conviction, the Nesters and a group with whom they associate have continued "to trespass upon the driveway and continued to constantly challenge [Cruey] and other members of the household with physical violence." (Compl. at para. 31). The group includes defendants Stephen C. Huff, Jr., Ricky Lee Early, Eric Nester, and Howard Mack Gregory.

On November 11, 2006, Cruey witnessed several vehicles driving through his yard and onto the Nesters' property. When Cruey walked toward the vehicles, a gunshot was fired by one of the parties. Although Cruey called 911 to report the incident, the responding deputy advised Cruey that there was nothing she could do. A few hours later, Cruey observed the same vehicles parked by the driveway bridge. Among the drivers were Bruce and Roger Nester.

As Cruey prepared to leave his residence, he was approached by Deputy R.J. Kirby from the Montgomery County Sheriff's Office, who claimed that Bruce Nester owned the bridge and the driveway. When Cruey advised Kirby of the 1999 Circuit Court order and of the fact that

2

Bruce Nester had been convicted of trespassing upon the driveway, Kirby grabbed Cruey, threw him to the ground, and tightly handcuffed Cruey's hands behind his back.

Kirby then escorted Cruey to a police car that was parked on the driveway bridge. Both Bruce and Roger Nester were waiting at the bridge, as was the female deputy who had responded to Cruey's earlier 911 call. Cruey alleges that Kirby conferred with Bruce and Roger Nester and asked them if they wanted him to take Cruey to jail. The Nesters responded in the affirmative and Kirby proceeded to do so at their direction. According to Cruey, Kirby refused to provide an explanation for the arrest.

Kirby drove to the Montgomery County Magistrate's Office, where defendant Elinor Williams was on duty. Cruey alleges that Kirby and Williams had a lengthy discussion regarding the particular charge that should be filed against him. They ultimately decided to charge Cruey with blocking a public highway in violation of Virginia Code § 18.2-404, since Cruey's lawnmower was in or near the driveway. Cruey alleges that Kirby knew that the driveway was not a public highway, but that Kirby could provide no other grounds for Cruey's warrantless arrest. Cruey also asserts that Williams knew that Bruce Nester had been convicted of trespassing upon the driveway, but nonetheless issued the warrant against Cruey. According to Cruey, the charge was later nolle prossed by the Commonwealth once the Commonwealth's Attorney learned of Bruce Nester's prior trespassing conviction.

Bruce and Roger Nester called the Montgomery County Sheriff's Office again on November 3, 2007, after Cruey made arrangements to have the bridge repaired. Deputy D.L. Conner responded to the Nesters' call and demanded that Cruey remove tools and equipment from the bridge. After speaking with Sheriff J.T. Whitt, Conner swore out a warrant against

Cruey that charged him with blocking a public highway. The warrant was issued by defendant Karen Garnand, another Montgomery County magistrate.

Cruey alleges that the Nesters and their associates have completely taken over the driveway since Cruey's second arrest, and the Nester group has prevented Cruey and other members of his household from leaving the property on multiple occasions. Although Cruey has attempted to swear out warrants against the Nester group, his requests have been denied by the magistrates.

On the night of October 17, 2009, Cruey left his truck parked in front of his law office in Shawsville. At approximately 10:15 p.m., defendant Howard Gregory set fire to the truck and the office building with an explosive device. Cruey alleges that he has since learned the identities of two other individuals who were involved in the incident, and that "[t]hey are connected with the Nester group." (Compl. at 37). As a result of the incident, Cruey's staff has refused to return to the law office, and Cruey has been forced to work from home.

Cruey filed this action under 42 U.S.C. § 1983 on December 22, 2009.* Cruey alleges, inter alia, that the moving defendants violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Cruey also alleges that the moving defendants engaged in a conspiracy to harm his law practice in violation of Virginia Code §§ 18.2-499 and 18.2-500. Cruey seeks monetary damages and injunctive relief.

---

* Cruey previously filed an action in state court that involved the same parties and issues as the instant action. Cruey alleges that the state court action was non-suited, that the instant action was filed within six months thereafter, and thus, that the applicable statute of limitations was tolled pursuant to Virginia Code § 8.01-229(E)(3).

4

## Discussion

### I. Motions to Dismiss

The Nester defendants and the magistrates have moved to dismiss the plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When deciding a motion under this rule, the court "must accept as true all of the factual allegations contained in the complaint." Erickson, 551 U.S. at 94. However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

#### A. Claims under 42 U.S.C. § 1983

The instant complaint is filed pursuant to 42 U.S.C. § 1983. Although not a source of substantive rights itself, § 1983 provides "a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). To state a claim under § 1983, a plaintiff must allege sufficient facts to establish two essential elements: (1) that a right secured by

the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

### 1. The Nester Defendants

As the court explained during the motions hearing on April 7, 2010, the court concludes that the allegations pertaining to Cruey's first arrest are sufficient to state a claim under § 1983 against Bruce and Roger Nester. With respect to the first required element under § 1983, it is without question that Cruey has alleged a violation of his constitutional rights arising from that arrest, specifically his rights under the Fourth Amendment. The Fourth Amendment prohibits unreasonable seizures, and it is well-established that a warrantless arrest without probable cause is unreasonable. See Clark v. Link, 855 F.2d 156, 162 (4th Cir. 1988) ("A warrantless arrest without probable cause is a violation of the Fourth Amendment.").

Additionally, the court concludes that the allegations describing Bruce and Roger Nester's involvement in the first arrest are sufficient to satisfy the under-color-of-state-law element. "[T]o act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State." Dennis v. Sparks, 449 U.S. 24, 27-28 (1980). Instead, "[i]t is enough that [a private defendant] is a willful participant in joint action with the State or its agents." Id. Thus, while "merely complaining to the police does not convert a private party into a state actor" for purposes of liability under § 1983, Collins v. Womancare, Inc., 878 F.2d 1145, 1155 (9th Cir. 1989), state action has been found to exist when circumstantial evidence shows that a private citizen "possessed and exerted influence over the . . . police, and conspired with them to have [the plaintiff] arrested," Wagenmann v. Adams, 829 F.2d 196, 211 (1st Cir. 1987).

In this case, the facts surrounding Cruey's first arrest plausibly suggest that Bruce and Roger Nester were not mere complainants, but instead possessed and exerted influence over Deputy Kirby and acted in concert with the deputy to have Cruey arrested without probable cause. Accordingly, the Nester defendants' motion to dismiss will be denied with respect to Cruey's § 1983 claim against Bruce and Roger Nester.

To the extent the plaintiffs' complaint also asserts a claim under § 1983 against Eric Nester and Ricky Lee Early, the Nesters' motion to dismiss will be granted. As noted during the hearing on the instant motions, the court agrees that the plaintiffs' complaint is devoid of facts that would support such claim against these two defendants.

### 2. **The Magistrates**

The court must also dismiss the § 1983 claims against Elinor Williams and Karen Garnand, who have been sued in their capacities as magistrates for the County of Montgomery. It is well-established that magistrates, as judicial officers, are entitled to absolute immunity for acts performed in their judicial capacity. Pressly v. Gregory, 831 F.2d 514, 517 (4th Cir. 1987). Judicial immunity includes immunity from damages as well as injunctive relief. See Roth v. King, 449 F.3d 1272, 1286 (D.C. Cir. 2006) (noting that "§ 1983, as amended in 1996 by the Federal Courts Improvement Act, explicitly immunizes judicial officers against suits for injunctive relief"); Lawrence v. Kuenhold, 271 F. App'x 763, 767 (10th Cir. 2008) (emphasizing that "the doctrine of judicial immunity now extends to [claims for] monetary relief, [and] injunctive relief as well").

The doctrine of judicial immunity is expansive. A judicial officer will not be deprived of immunity simply because an action was taken in error, was done maliciously, or exceeded the

scope of her authority. Stump v. Sparkman, 435 U.S. 349, 356 (1978). Instead, a judicial officer will be subject to liability only when the officer's actions are not taken in her judicial capacity or when they are taken in the complete absence of all jurisdiction. Mireles v. Waco, 502 U.S. 9, 11-12 (1991).

Applying these principles, the court concludes that Cruey's § 1983 claims against the magistrates are barred by the doctrine of judicial immunity. The magistrates were named as defendants in the instant action because they issued arrest warrants against Cruey and/or refused to issue warrants at his behest. Because the denial or issuance of an arrest warrant is clearly a function performed within a magistrate's judicial capacity, the § 1983 claims against the magistrates must be dismissed. See Va. Code § 19.2-45 (enumerating the responsibilities of magistrates).

### B. Statutory Business Conspiracy Claim

Cruey also asserts a supplemental claim against the moving defendants under the Virginia Business Conspiracy Act, which imposes civil liability on any two or more persons who "combine, associate, agree, mutually undertake or concert together for the purpose of willfully and maliciously injuring another in his reputation, trade, business, or profession." See Va. Code §§ 18.2-499 and 18.2-500. To prevail on a statutory business conspiracy claim, a plaintiff must prove by clear and convincing evidence the following elements: (1) concerted action; (2) legal malice; and (3) causally related injury. To survive a motion to dismiss, such claim "must be pleaded with particularity, and with more than mere conclusory language." Gov't Employees Ins. Co. v. Google, Inc., 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) (internal citation and quotation marks omitted); see also Field v. GMAC LLC, 660 F. Supp. 2d 679, 689 (E.D. Va.

2008) (describing the "heightened pleading standard" applicable to claims under the Virginia Business Conspiracy Act).

In this case, the plaintiffs' business conspiracy claim appears to be based on the incident that occurred on October 17, 2009, during which Cruey's vehicle and law office were set on fire. Although Cruey identifies defendant Howard Gregory as the individual responsible for setting off the explosive device that caused the fire, the allegations in the plaintiffs' complaint are insufficient to establish that the incident was the result of concerted action between Gregory and the moving defendants. While Cruey asserts that Gregory is "connected" with the Nester group, and that Gregory, upon information and belief, was "hired by *one or more* of the . . . defendants," such allegations fail to satisfy the heightened pleading standard applicable to business conspiracy claims, and are otherwise insufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 570. Accordingly, the court will grant the defendants' motions with respect to this claim.

## II. Plaintiffs' Motions

The plaintiffs have moved for entry of default against Stephen C. Huff, Jr., pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. Because the exhibits submitted with the plaintiffs' motion sufficiently demonstrate that Huff was served with process and that he has "failed to plead or otherwise defend" as provided by Rule 55(a), the court will grant the motion and direct the Clerk to enter Huff's default.

The plaintiffs have also filed a motion for permanent injunctive relief. For the reasons stated during the hearing on the parties' motions, the court finds that the motion for permanent

injunctive relief is premature at this stage of the litigation and will therefore be taken under advisement pending final disposition of the case.

## Conclusion

For the reasons stated, the motion to dismiss filed by the Nester defendants will be granted in part and denied in part; the motion to dismiss filed by the magistrates will be granted; the plaintiffs' motion for entry of default against Stephen Huff will be granted; and the plaintiffs' motion for permanent injunctive relief will be taken under advisement.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 16th day of April, 2010.

_____
United States District Judge