CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 08 2010

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| B.K. CRUEY, P.C. and B.K. CRUEY, | ) |
| | ) Civil Action No. 7:09CV00516 |
| Plaintiffs, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) By: Hon. Glen E. Conrad |
| STEPHEN C. HUFF, JR., et al., | ) Chief United States District Judge |
| | ) |
| Defendants. | ) |

B.K. Cruey, an attorney in Montgomery County, Virginia, filed this civil rights action under 42 U.S.C. § 1983 on behalf of himself and his law firm. The case is presently before the court on cross-motions for summary judgment filed by Cruey and defendants J.T. Whitt, R.J. Kirby, D.L. Conner, Bruce Nester, and Roger Nester. For the reasons that follow, the defendants' motions will be granted and Cruey's motion will be denied.

## Factual Background

Since March of 1999, Cruey has leased a house on a 29-acre tract of land in Montgomery County, Virginia that is owned by Scott and Pam Easter. The house is situated approximately one-half mile from Ironto Road and is accessible by a driveway that crosses the Roanoke River.

Bruce Nester owns a tract of land that adjoins the driveway. The driveway has been the subject of a longstanding dispute involving Nester, the Easters, and Cruey. In the late 1990s, Cruey represented the Easters in a declaratory judgment action against Bruce and Sharon Nester. By order entered October 11, 1999, the Circuit Court of Montgomery County ruled that the Nesters had abandoned their easement over the driveway, and that the Nesters had no right to

interfere with the Easters' use of the driveway. Notwithstanding the order, the Nesters continued to use the driveway, and on January 9, 2001, Bruce Nester was convicted of trespassing.

Since that time, Cruey has posted copies of the conviction order on a tree near the driveway, along with copies of the order entered in the declaratory judgment action. Cruey alleges that the orders have been torn down by the Nesters on a regular basis.

On November 11, 2006, Montgomery County Deputy R.J. Kirby was dispatched to Bruce Nester's residence. Nester gave the deputy a "pretty long explanation of the civil land dispute" between himself and Cruey (Kirby Dep. at 8), and complained that Cruey had blocked the driveway. Nester provided Deputy Kirby a copy of a land plat, and claimed that "he owned the driveway and [that Cruey] had a right of way across it." (Kirby Dep. at 14).

After speaking with Bruce Nester, Deputy Kirby drove down a portion of the driveway and discovered a John Deere lawn tractor blocking the driveway bridge. Based on this observation and the information provided by Bruce Nester, the deputy consulted with a magistrate regarding the potential implication of Virginia Code § 18.2-404. That statute, entitled "Obstructing free passage of others," provides as follows:

> Any person or persons who in any public place or on any private property open to the public unreasonably or unnecessarily obstructs the free passage of other persons to and from or within such place or property and who shall fail or refuse to cease such obstruction or move on when requested to do so by the owner or lessee or agent or employee of such owner or lessee or by a duly authorized law-enforcement officer shall be guilty of a Class 1 misdemeanor. Nothing in this section shall be construed to prohibit lawful picketing.

Va. Code § 18.2-404.

After obtaining clarification from the magistrate regarding the Virginia statute, Deputy Kirby walked up to Cruey's residence to speak to Cruey. Cruey told Kirby that he had a court order establishing that the Nesters did not own the driveway. However, Cruey was unable to produce a copy of the order. The copy that had been affixed to a tree near the driveway was no longer posted.

Kirby confirmed that the lawn tractor blocking the driveway belonged to Cruey. Although Kirby asked Cruey to move the lawnmower several times, Cruey adamantly refused. As a result, Kirby placed Cruey under arrest for violating § 18.2-404 of the Virginia Code. In accordance with the policy of Montgomery County Sheriff J.T. Whitt, Kirby placed Cruey in handcuffs.[1] Because the deputy was unable to comfortably handcuff Cruey's hands behind his back, the deputy handcuffed Cruey's hands in front of his body. Kirby also searched Cruey and removed a knife from his pocket.

Kirby then escorted Cruey through the yard to his patrol car parked at the driveway bridge. After Cruey was placed in the patrol car, Bruce Nester inquired about the lawn tractor. When Kirby asked whether Cruey could have someone move the tractor, Cruey responded in the negative. Because Deputy Kirby was of the opinion that he "didn't have any legal reason to remove the tractor from the road," he advised Nester that the tractor would have to be towed if Nester wanted it removed. (Kirby Dep. at 81).

---

[1] The record contains no evidence of any written policy on the use of handcuffs. However, both Deputy Kirby and Sheriff Whitt testified that it was the sheriff's policy to handcuff all arrested persons who were placed in a patrol car for transport. See Kirby Dep. at 31 ("For officer safety and for the sheriff, we will handcuff all subjects being arrested and placed in the back of our cruiser."); Whitt Dep. at 11 ("All persons that are arrested are handcuffed.").

3

Deputy Kirby then transported Cruey to the Sheriff's Office in Christiansburg, a trip that takes approximately 25 minutes. Cruey remained handcuffed for the duration of the trip. He now claims that although he complained about the handcuffs being painfully tight, Kirby failed to loosen them.

The magistrate on duty issued an arrest warrant against Cruey for violating § 18.2-404. That charge was later dismissed with prejudice.

Almost one year later, on November 3, 2007, Deputy D.L. Conner was dispatched to Bruce Nester's residence. Upon his arrival, Conner was advised that Roger Nester had gone to cut wood on Bruce Nester's property, and that Cruey had blocked the driveway, preventing Roger from returning home. Conner walked down the driveway and observed bridge railings and tools blocking the driveway. He then spoke to Cruey, who was working in a nearby garden. Although Cruey claimed that the driveway belonged to him, he did not have any documentation to that effect. With Conner's assistance, Cruey ultimately moved the items off the bridge, so that Roger Nester could travel down the driveway.

A few hours later, Conner was dispatched to Bruce Nester's residence a second time, after Bruce Nester called and complained about the bridge being blocked again. Nester showed Conner a land plat and claimed to own the driveway. Conner walked over to the driveway and observed a cone, bridge railings, and other property belonging to Cruey. Conner photographed the scene, presented the photograph to a magistrate, and swore out a warrant for Cruey's arrest. The arrest warrant charged Cruey with violating the same obstruction statute.

On November 16, 2007, following his receipt of the second arrest warrant, Cruey attempted to fax Sheriff Whitt a copy of the 1999 order entered in the declaratory judgment

action against Bruce and Sharon Nester. On December 1, 2008, Sheriff Whitt advised Cruey that he had not received a copy of the order. The sheriff subsequently sent one of his deputies to obtain a certified copy from Cruey.

Both of the charges against Cruey for violating § 18.2-404 have been dismissed. His property dispute with the Nesters remains ongoing.

## Procedural History

On December 22, 2009, Cruey filed this § 1983 action against Bruce Nester, Roger Nester, Deputy Kirby, Deputy Conner, Sheriff Whitt, and seven other defendants. Cruey alleged that the defendants violated his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and that the defendants engaged in a conspiracy to harm his law practice in violation of Virginia Code §§ 18.2-499 and 18.2-500. Additionally, Cruey asserted supplemental state tort claims of assault, battery, and false imprisonment against Deputy Kirby.

After the court ruled on motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the following claims remained: the plaintiff's Fourth Amendment claims against Bruce Nester, Roger Nester, Deputy Kirby, Deputy Conner, and Sheriff Whitt; and the plaintiff's supplemental state tort claims for assault, battery, and false imprisonment against Deputy Kirby. The parties have now completed discovery and filed cross-motions for summary judgment on the remaining claims.

## Standard of Review

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met that burden, however, the burden shifts to the nonmoving party to show that such an issue does, in fact, exist. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The nonmoving party must set forth more than a "mere . . . scintilla of evidence" to forestall summary judgment. Anderson, 477 U.S. at 252.[2]

## Discussion

I. **Claims Under § 1983**

Cruey asserted several claims under 42 U.S.C. § 1983, which imposes civil liability on any person acting under color of state law to deprive another person of rights and privileges secured by the Constitution and laws of the United States. Specifically, Cruey alleged that he was unlawfully arrested without probable cause in violation of the Fourth Amendment to the United States Constitution, that he was unlawfully searched in violation of the Fourth

---

[2] Cross-motions for summary judgment are reviewed under the same standard, with the court considering "each motion separately on its own merits to determine whether either [side] deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal citation and quotation marks omitted).

6

Amendment, and that Deputy Kirby used unconstitutionally excessive force against him. For the following reasons, the court concludes that all of the moving defendants are entitled to summary judgment with respect to these claims.

### A. The Nester Defendants

As previously summarized, Bruce and Roger Nester are the neighbors responsible for calling the police on both occasions when Cruey was arrested. As private citizens, the Nesters are not subject to liability under § 1983 unless they acted "under color of state law." West v. Atkins, 487 U.S. 42, 48-49 (1988). The under-color-of-state-law element of § 1983, like the Fourteenth Amendment's state-action requirement, "excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)). Thus, to be subject to liability under § 1983, "[t]he person charged must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." DeBauche v. Trani, 191 F.3d 499, 506 (4th Cir. 1999). "[P]rivate action will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient." Id. at 507 (quoting Blum, 457 U.S. at 1004).

In keeping with these principles, courts have found state action to exist when circumstantial evidence shows that a private citizen "possessed and exerted influence over the . . . police, and conspired with them to have [the plaintiff] arrested." Wagenmann v. Adams, 829 F.2d 196, 211 (1st Cir. 1987). On the other hand, courts have held that "[p]roviding information to the state and pressing for state action against an individual, without more, cannot suffice to

7

make a private entity liable under section 1983 as a state actor." Manax v. McNamara, 842 F.2d 808, 813 (5th Cir. 1988). Stated differently, "merely complaining to the police does not convert a private party into a state actor" for purposes of § 1983. Collins v. Womancare, Inc., 878 F.2d 1145, 1155 (9th Cir. 1989).

Applying the foregoing case law, the court concludes that the record in the instant case contains no evidence from which a reasonable jury could find that Bruce and Roger Nester acted under color of state law as required by § 1983. While Cruey's complaint alleged that the Nesters conspired with the Montgomery County Sheriff's Office to have him unlawfully arrested, Cruey admitted during his deposition that he has no evidence that would support the existence of such conspiracy. Moreover, it is clear from the record that the actions of Deputy Kirby and Deputy Conner were based on their own observations at the scene, and that the deputies' decisions to arrest Cruey were made without any contemporaneous contact with either of the Nesters. In short, Cruey has failed to establish that either of the Nesters played any role in Cruey's arrests other than calling the Sheriff's Office to report that he had blocked them from using the driveway. Because "merely complaining to the police does not convert a private party into a state actor," Collins, 878 F.2d at 1155, Bruce and Roger Nester are both entitled to summary judgment on the § 1983 claims.

**B.     The Sheriff**

The court also concludes that Sheriff Whitt is entitled to summary judgment on the § 1983 claims. It is well-established that a sheriff cannot be held vicariously liable under § 1983 for his subordinates' actions. See Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142 (4th Cir. 1982). Instead, liability under § 1983 requires a showing of personal fault

8

on the part of a defendant, either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs. Id. To hold a supervisory official liable under § 1983 for the unconstitutional acts of his subordinates, a plaintiff must demonstrate: (1) that the conduct by the subordinate employees that caused the deprivation was undertaken to effectuate an official policy or custom for which the official was responsible, Id.; or (2) that the supervisory official was aware of a pervasive, unreasonable risk of harm to the plaintiff, and that his failure to take corrective action, either out of his own deliberate indifference or his tacit authorization, was a causative factor in the constitutional injuries inflicted by others. See Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984).

As initially pled, Cruey's claim against Sheriff Whitt was premised primarily on Cruey's second arrest in November of 2007. Cruey asserted that both Deputy Conner, who applied for the arrest warrant, and Sheriff Whitt were aware that the warrant was not based on probable cause. Specifically, Cruey alleged that Conner and Whitt had knowledge of the prior Circuit Court order regarding the property, and that Conner, after conferring with Whitt, nonetheless swore out a warrant against Cruey that again charged him with violating Virginia Code § 18.2-404.

After having the benefit of discovery, however, Cruey has been unable to substantiate his allegations regarding Sheriff Whitt's involvement in the second arrest. The record contains no evidence that Deputy Conner conferred with Sheriff Whitt prior to seeking an arrest warrant against Cruey, and Cruey conceded at his deposition that Sheriff Whitt may not have been aware of the prior Circuit Court order at the time of the second arrest. Indeed, Cruey testified that he never personally delivered a copy of the order to Sheriff Whitt, and the record reveals that it was

on the part of a defendant, either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs. Id. To hold a supervisory official liable under § 1983 for the unconstitutional acts of his subordinates, a plaintiff must demonstrate: (1) that the conduct by the subordinate employees that caused the deprivation was undertaken to effectuate an official policy or custom for which the official was responsible, Id.; or (2) that the supervisory official was aware of a pervasive, unreasonable risk of harm to the plaintiff, and that his failure to take corrective action, either out of his own deliberate indifference or his tacit authorization, was a causative factor in the constitutional injuries inflicted by others. See Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984).

As initially pled, Cruey's claim against Sheriff Whitt was premised primarily on Cruey's second arrest in November of 2007. Cruey asserted that both Deputy Conner, who applied for the arrest warrant, and Sheriff Whitt were aware that the warrant was not based on probable cause. Specifically, Cruey alleged that Conner and Whitt had knowledge of the prior Circuit Court order regarding the property, and that Conner, after conferring with Whitt, nonetheless swore out a warrant against Cruey that again charged him with violating Virginia Code § 18.2-404.

After having the benefit of discovery, however, Cruey has been unable to substantiate his allegations regarding Sheriff Whitt's involvement in the second arrest. The record contains no evidence that Deputy Conner conferred with Sheriff Whitt prior to seeking an arrest warrant against Cruey, and Cruey conceded at his deposition that Sheriff Whitt may not have been aware of the prior Circuit Court order at the time of the second arrest. Indeed, Cruey testified that he never personally delivered a copy of the order to Sheriff Whitt, and the record reveals that it was

not until <u>after</u> the second arrest that Cruey attempted to fax Sheriff Whitt a copy of the order. Consequently, the record contains no evidence from which a reasonable jury could find Sheriff Whitt liable for Cruey's second arrest.

Cruey also appears to argue that Sheriff Whitt is subject to supervisory liability for the alleged use of excessive force by Deputy Kirby, since "it is the policy of [Whitt's] department" to handcuff "every individual arrest[ed] in Montgomery County." (Pl.'s Supplemental Br. at 35). While Sheriff Whitt did testify that his deputies are generally expected to handcuff all arrestees, it was not the mere use of handcuffs that provides the basis for Cruey's excessive force claim. See Fisher, 690 F.2d at 1143 (emphasizing that a supervisory official could be liable "[o]nly if the evidence showed that conduct directly causing the deprivation was done to effectuate an official policy or custom for which [he] was responsible"). Instead, the excessive force claim centers on Cruey's assertion that the handcuffs used by Deputy Kirby were unduly tight and that Deputy Kirby failed to respond when Cruey complained of pain. There is nothing in the record, however, which would indicate that such action or omission by Deputy Kirby was in keeping with an established policy or custom chargeable to Sheriff Whitt. Instead, Sheriff Whitt testified at his deposition that if an arrestee complained of severe pain or exhibited signs of swelling, "[he] would recommend that the person be, that they either be loosened or placed in a different manner." (Whitt Dep. at 25). The fact that Deputy Kirby's response to Cruey's complaint was allegedly inconsistent with this recommendation "cannot be charged to [Sheriff Whitt] under developed § 1983 doctrine." Fisher, 690 F.2d at 1143.

In sum, there is no evidence from which a reasonable jury could find that Sheriff Whitt had a policy or custom of placing unreasonably tight handcuffs on arrestees, nor is there any

other factual premise for a claim against the sheriff based upon the alleged use of excessive force by Deputy Kirby. For these reasons, Sheriff Whitt is entitled to summary judgment on the § 1983 claims.

### C. The Deputies

Deputy Kirby and Deputy Conner have moved for summary judgment on the basis of qualified immunity. As government officials, the deputies are entitled to qualified immunity from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to protect government officials "from undue interference with their duties and from potentially disabling threats of liability." Id. at 806. It provides protection to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

In Saucier v. Katz, 533 U.S. 194 (2001), the United States Supreme Court established a two-step sequence for determining a defendant's entitlement to qualified immunity. "First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815-816 (2009) (citing Saucier, 533 U.S. at 201). More recently, the Supreme Court has held that the two-step progression is not required, and that courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." Id. at 818. In this case, the court finds such

analytic flexibility to be particularly appropriate and, thus, will focus its consideration on whether Cruey has alleged conduct that constitutes a violation of any clearly established right.

The contours of this inquiry were defined by the Supreme Court in Saucier:

> This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . .
>
> . . . . [W]e emphasized in [Anderson v. Creighton, 483 U.S. 635, 640 (1987)] "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." 483 U.S. at 640. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Saucier, 533 U.S. at 201-201; see also Wilson v. Layne, 526 U.S. 603, 615 (1999) (emphasizing that "the right allegedly violated must be defined at the appropriate level of specificity," and holding that the appropriate inquiry was "whether a reasonable officer could have believed that [his actions] were lawful, in light of clearly established law and the information the officers possessed"). As the United States Court of Appeals for the Fourth Circuit recently emphasized, "it is clear under Saucier that the purpose of the qualified immunity inquiry is 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" Henry v. Purnell, 619 F.3d 323, 335 (4th Cir. 2010) (quoting Saucier, 533 U.S. at 206).

### 1. **The First Arrest and the Search Incident to that Arrest**

Having outlined the relevant portion of the qualified immunity analysis, the court turns to Cruey's claims arising from his first arrest, particularly his claim that he was arrested and

searched without probable cause in violation of the Fourth Amendment.[3] It is without question that the general right to be arrested only on probable cause is "clearly established." Smith v. Reddy, 101 F.3d 351, 356 (4th Cir. 1996). However, this court must undertake a more particularized inquiry, focusing on whether "'a reasonable officer could have believed [Cruey's arrest] to be lawful, in light of clearly established law and the information [Deputy Kirby] possessed.'" Hunter v. Bryant, 502 U.S. 224, 227 (1991) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)); see also Smith, 101 F.3d at 356. The reasonableness of Deputy Kirby's conduct "does not turn on whether probable cause was, in fact, present." Smith, 101 F.3d at 356. "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." Hunter, 502 U.S. at 227 (quoting Anderson, supra).

In this case, following the close of discovery, there is no genuine dispute over the information Deputy Kirby possessed at the time of Cruey's first arrest. It is undisputed that Deputy Kirby observed Cruey's lawn tractor obstructing the driveway, and that Cruey refused to move the tractor after repeated requests by Deputy Kirby. It is also undisputed that Bruce Nester claimed to own the driveway, and that he provided evidence to support his claim of ownership. Although Cruey told the deputy that Bruce Nester did not own the driveway and that a court order had been entered to that effect, Cruey was unable to produce a copy of the order, and there is no evidence that Deputy Kirby had prior knowledge of such order.

---

[3] The record establishes that Cruey was searched incident to his arrest for obstructing the driveway. It is well-settled that a search incident to an arrest is a "traditional exception to the warrant requirement of the Fourth Amendment." United States v. Currence, 446 F.3d 554, 556 (4th Cir. 2006); see also Michigan v. DeFillipo, 443 U.S. 31, 35 (1979) ("The fact of a lawful arrest, standing alone, authorizes a search.). It follows, then, that if Deputy Kirby is entitled to qualified immunity on the claim of unlawful arrest, he will also be entitled to qualified immunity for the search incident to the arrest.

Rather than disputing the facts known to Deputy Kirby at the time of the first arrest, Cruey now argues that his actions did not constitute a violation of the particular statute under which he was charged. As stated above, that statute, entitled "Obstructing free passage of others," prohibits "[a]ny person or persons who in any public place or on any private property open to the public" from "unreasonably or unnecessarily obstruct[ing] the free passage of other persons to and from or within such place or property . . . ." Va Code § 18.2-404. Emphasizing that the driveway obstructed by his lawn tractor was not "public property" or generally "open to the public," Cruey contends that Deputy Kirby had no reasonable basis to believe that Cruey was violating the statute.

While Cruey's reading of § 18.2-404 may have merit, the court nevertheless concludes that Deputy Kirby is entitled to qualified immunity. The statute does not define "private property open to the public" and, to the best of the court's knowledge, no Virginia court has ever held that the statute would not prohibit the obstruction of a residential driveway. Moreover, it is undisputed that, prior to arresting Cruey, Deputy Kirby consulted with a magistrate regarding the deputy's understanding of the statute, and that the magistrate ultimately found probable cause to believe that the statute was violated. Because officers are personally liable only "for transgressing bright lines," not for intruding into "gray areas," the court is convinced that any statutory misinterpretation by Deputy Kirby is not a legitimate basis to deprive him of qualified immunity. Wilson v. Kittoe, 337 F.3d 392, 403 (4th Cir. 2003) (internal citation and quotation marks omitted); see also Saucier, 533 U.S. at 202 ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.").

14

As the Supreme Court has recognized, "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present," and "in such cases those officials – like other officials who act in ways they reasonably believed to be lawful – should not be held personally liable." Anderson, 483 U.S. at 641. Here, there appears to be no reason to conclude that Deputy Kirby was not sincere in his belief that Cruey was violating the Virginia statute. Even if the deputy was mistaken in his interpretation of the law, the mistake was not unreasonable, and he is entitled to qualified immunity on the Fourth Amendment claims related to the first arrest and the search incident to that arrest.

### 2. **The Use of Force**

Deputy Kirby also argues that he is entitled to qualified immunity with respect to Cruey's claim that Kirby used excessive force during the course of the arrest. It is clear from Cruey's deposition that this claim is based solely on the manner in which he was handcuffed by Deputy Kirby. When asked during his deposition whether the deputy exerted any force over him other than applying handcuffs, Cruey testified as follows:

> A. No, but with my big wrists it was hurting. I mean, I think I did comment and say, "This is really painful."
>
> Q. Did he make a response to that?
>
> A. I don't think so.

(Cruey Dep. at 64). With his complaint, Cruey submitted photographs, taken following the arrest, that show abrasions on both of Cruey's wrists. Cruey has also alleged that he suffered nerve damage from the handcuffs, although he has not submitted any medical evidence documenting such injury.

15

Even if the court assumes that Cruey has alleged sufficient facts to establish an excessive force violation, the court concludes that Deputy Kirby is also entitled to qualified immunity with respect to this claim. While "[i]t is clearly established that citizens have a Fourth Amendment right to be free from unreasonable seizures accomplished by excessive force," Valladares v. Cordero, 552 F.3d 384, 388 (4th Cir. 2009), this court must focus on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. Having carefully considered the record on summary judgment, and applicable Fourth Circuit precedent, the court is convinced that this question must be answered in the negative. The court agrees with Deputy Kirby that a reasonable officer in his position would not have known that failing to respond to Cruey's complaint about tight handcuffs violated the Constitution.

Cruey has pointed to no precedent from the Supreme Court or the Fourth Circuit that notifies officers that the failure to respond to a complaint of tight handcuffing constitutes excessive force. To the contrary, the Fourth Circuit has held that an arrestee's claim that her handcuffs were too tight was "so insubstantial that it [could not] as a matter of law support her claim [for excessive force] under either the Fourth Amendment or the Fourteenth [Amendment]." Carter v. Morris, 164 F.3d 215, 219 n.3 (4th Cir. 1999) (internal citations omitted). Along the same lines, the United States Court of Appeals for the Sixth Circuit recently held that "a constitutional requirement obligating officers to stop and investigate each and every utterance of discomfort and make a new judgment as to whether the handcuffs are 'too tight' is neither reasonable nor clearly established." Fettes v. Hendershot, 375 F. App'x 528, 533 (6th Cir. 2010).

16

Here, the record reveals that Deputy Kirby handcuffed Cruey's hands in front of his body after not being able to comfortably handcuff Cruey's hands behind his back, and that Cruey remained handcuffed during the relatively short trip to the Sheriff's Department. Even if Cruey advised Deputy Kirby that the handcuffs were painful, as Cruey "thinks" he did, (Cruey Dep. at 64), Kirby did not have notice that failing to respond to the complaint would be clearly unlawful. "At the very worst," the decision not to readjust Cruey's handcuffs "falls in the 'hazy border between excessive and acceptable force' along which qualified immunity operates to shield officers from discretionary, on-the-spot judgments." Fettes, 375 F. App'x at 534. For these reasons, the court concludes that Deputy Kirby is entitled to qualified immunity with respect to the excessive force claim.

### 3. The Second Arrest

Cruey also asserted a Fourth Amendment unlawful arrest claim against Deputy Conner. As previously summarized, Conner responded to Cruey's residence on November 3, 2007, and was responsible for procuring the second warrant that charged Cruey with violating the obstruction statute. For the reasons discussed with respect to the unlawful arrest claim against Deputy Kirby, the court likewise concludes that Deputy Conner is entitled to qualified immunity.

"When an officer acts pursuant to a warrant, the pertinent question is whether the officer could have reasonably thought that there was probable cause to seek the warrant." Smith v. Reddy, 101 F.3d 351, 356 (4th Cir. 1996). Qualified immunity is unavailable "only if 'the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" Id. (quoting Malley v. Briggs, 475 U.S. 335, 344-345 (1986)). "In

17

other words, an officer is not denied qualified immunity for making a mistake, as long as that mistake is reasonable under the circumstances." Id.

When Conner sought the second warrant against Cruey, he had responded to the Nesters' residence on two separate occasions following reports that Cruey was blocking their driveway, and he had personally observed Cruey's property obstructing the driveway bridge on both occasions. Bruce Nester showed Conner a land plat that purportedly established his ownership of the driveway, and there is no evidence that Conner was aware of any prior orders to the contrary. Conner photographed the driveway when he responded on the second occasion, and took the photograph to a magistrate, who found probable cause to believe that Cruey had violated Virginia Code § 18.2-404. Regardless of whether the deputy and the magistrate were correct in their interpretation of the statute, the court is convinced that the deputy's actions were reasonable, and that he did not violate any clearly established law when he swore out a warrant for Cruey's arrest. Accordingly, Deputy Conner is also entitled to qualified immunity.

### 4.    Claim for Injunctive Relief

While the doctrine of qualified immunity does not bar Cruey's claim for injunctive relief against the deputies under § 1983,[4] see Pearson, 129 S. Ct. at 822, the court nonetheless concludes that such claim must be denied. "The law is well settled that federal injunctive relief is an extreme remedy." Simmons v. Poe, 47 F.3d 1370, 1382 (4th Cir. 1995). Such relief is "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." City of

---

[4] In his prayer for relief, Cruey asked that "a permanent injunction be issued against the Defendants enjoining them from interfering with his constitutional and statutory rights . . . ." (Compl. at 50).

18

Los Angeles v. Lyons, 461 U.S. 95, 104 (1983). Because Cruey has not adduced facts which demonstrate either a continuing wrong or a real and immediate threat that he "will again be wronged in a similar way" by the deputies, Id., his request for injunctive relief will be denied.

## II. State Law Claims

Having determined that the moving defendants are entitled to summary judgment on the plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over any remaining claims under state law. See 28 U.S.C. § 1367. Accordingly, such claims will be dismissed without prejudice.

## Conclusion

For the reasons stated, the court concludes that Bruce Nester, Roger Nester, Deputy Kirby, Deputy Conner, and Sheriff Whitt are entitled to summary judgment on the claims asserted under § 1983. The defendants' motions for summary judgment will be granted, Cruey's motion for summary judgment will be denied, and any remaining state law claims will be dismissed without prejudice.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

ENTER: This 8th day of November, 2010.

_____
Chief United States District Judge